JUDGE CASTEL

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael Faillace [MF-8436]
60 East 42nd. St. Suite 2020
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiffs*

13 CV 2110

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF New York**
-------------------------------------------------------------------X
ARMANDO LOPEZ, BARBIE RODRIGUEZ,
CESAR MELO, DELGADINO ALBERTO and
SANTIAGO DIAZ individually and on behalf of
others similarly situated,

　　　　　　　　　　　　　　　*Plaintiffs*,

　　　　　　　　-against-

PJ FOOD SERVICES INC., (d/b/a PAPA JOHN'S),
JOHN DOE 1 CORP., (d/b/a/ PAPA JOHN'S on 2119
First Avenue), JOHN DOE 2 CORP., (d/b/a/ PAPA
JOHN'S on  703 Lenox Ave) , JOHN DOE 3 CORP.,
(d/b/a/ PAPA JOHN'S on 3477 Broadway ),  LARRY
DOE and RONALD JOHNSON.
　　　　　　　　　　　　　　　*Defendants.*
-------------------------------------------------------------------X

**COMPLAINT**

**FLSA Collective Action**

**ECF Case**



RECEIVED
MAR 29 2013
U.S.D.C. S.D. N.Y.
CASHIERS

　　　Plaintiffs Armando Lopez, Barbie Rodriguez, Cesar Melo, Delgadino Alberto and

Santiago Diaz individually and on behalf of others similarly situated, ("Plaintiffs") by and

through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief,

and as against PJ Food Services Inc., (d/b/a Papa John's), John Doe 1 Corp., (d/b/a Papa John's

on 2119 First Avenue), John Doe 2 Corp., (d/b/a Papa John's on 703 Lenox Avenue ),  John Doe

3 Corp., (d/b/a Papa John's on 3477 Broadway),  Larry Doe and Ronald Johnson ("Defendants"),

allege as follows:

1

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of PJ Food Services Inc., John Doe 1 Corp., John Doe 2 Corp., John Doe 3 Corp.,   Larry Doe and Ronald Johnson ("Defendants").

2.      Upon information and belief, Defendants own, operate, or control a chain of five (5) pizzerias in Manhattan under the name of "Papa John's", including 2119 1st Avenue, New York, New York  10029("First Avenue location"), 703 Lenox Avenue, New York New York 10039("145th Street Lenox Avenue location"), and 3477 Broadway, New York, New York 10031("Broadway location").

3.      Upon information and belief, Individual Defendants Larry Doe and Ronald Johnson serve as owners, principals or agents of Defendant Corporations and through those corporate entities operate or operated the chain of pizzerias referred to above as a joint or unified enterprise.

4.      Plaintiffs are former employees of Defendants.  They were employed as delivery workers, pizza makers and assistant manager.

5.      However, the daily work performed by each of the delivery worker Plaintiffs entailed additional responsibilities that were not related to deliveries such as dishwashing, washing pizza dough mixing containers, sweeping and mopping, cleaning the counter, the oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker, receiving and stocking deliveries around the basement and transporting food and other items between locations (hereinafter non-delivery, non-tip duties).

6.     At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations. Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

7.     Defendants employed and accounted for several Plaintiffs as delivery workers in their payroll, but in actuality their duties included greater or equal time spent in the non-delivery, non-tipped functions outlined above.

8.     At all times, regardless of duties, Defendants paid delivery workers at the lowered tip-credited rate.

9.     However, under both the FLSA and NYLL Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day). *See* 12 N.Y.C.R.R. §146.

10.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum wage rate and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them delivery workers instead of non-tipped employees.

11.     In addition, Defendants' manager entered false start and stop times for each of the plaintiffs, in order to avoid paying them overtime under the FLSA and NYLL.

12.     Furthermore, Defendants required one of the plaintiffs to use a false name and social security number for one of the shifts he worked and paid him separate checks.

13.    For at least six years prior to the filing of this action, continuing to the present, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other delivery employees' tips and made unlawful deductions from Plaintiffs' and other delivery employees' wages.

14.    Plaintiffs now bring this action to recover damages, including but not limited to, unpaid minimum wages and overtime premiums, liquidated damages, interest, attorneys' fees and costs pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the New York Minimum Wage Act, N.Y. Lab. Law §§ 650 *et seq.*, and the spread of hours wage order of the New York Commissioner of Labor, 12 N.Y.C.R.R. § 137-1.7 (2005) ("Spread of Hours Wage Order").

15.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216 (b).

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216 (b) ("FLSA"), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367 (a).

17.    Venue is proper in this District under 28 U.S.C. § 391 (b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants reside and Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

18.     Plaintiff Armando Lopez ("Plaintiff Lopez") is an adult individual residing in New York County, New York.

19.     Plaintiff Lopez was employed as a delivery worker by Defendants from approximately August 2012 to December 2012.

20.     During the course of his employment with Defendants, Plaintiff Lopez was stationed at the First Avenue location.

21.     Plaintiff Barbie Rodriguez ("Plaintiff Rodriguez") is an adult individual residing in New York County, New York.

22.     Plaintiff Rodriguez was employed as a cashier by Defendants from approximately September 2012 through December 2012.

23.     During the course of her employment with Defendants, Plaintiff Rodriguez was stationed at the First Avenue location.

24.     Plaintiff Cesar Melo ("Plaintiff Melo") is an adult individual residing in Bronx County, New York.

25.     Plaintiff Melo was employed by Defendants as a delivery worker from approximately July 2012 to January 2013.

26.     During the course of his employment with Defendants, Plaintiff Melo was stationed at the First Avenue location.

27.     Plaintiff Delgadino Alberto ("Plaintiff Alberto") is an adult individual residing in Queens County, New York.

28.    Plaintiff Alberto was employed by Defendants as a delivery worker and pizza maker from approximately February 2006 until February 25th, 2013.

29.    From approximately March 2007 until on or about March 2010 Plaintiff Alberto was stationed at the 145th Street Lenox Avenue and the Broadway locations.  From approximately March 2010 until on or about February 2013 Plaintiff Alberto was stationed at the First Avenue location.

30.    Plaintiff Santiago Diaz ("Plaintiff Diaz") is an adult individual residing in Kings County, New York.

31.    Plaintiff Diaz was employed by Defendants as a delivery worker from approximately October 2012 until March 3rd 2013.

32.    During the course of his employment with Defendants, Plaintiff Diaz was stationed at the First Avenue location.

*Defendants*

33.    Defendants own, operate or control a chain of pizza parlors under the name "Papa John's."

34.    Upon information and belief, PJ Food Services Inc. is a domestic corporation organized and existing under the laws of the State of New York. It maintains its corporate headquarters at 111 8th Avenue, New York, New York 10011.

35.    Upon information and belief, John Doe 1 Corp., is a domestic corporation organized and existing under the laws of the State of New York. It operates "Papa John's" Pizza at 2119 1st Avenue, New York, New York 10029.

36.    Upon information and belief, John Doe 2 Corp., is a domestic corporation organized and existing under the laws of the State of New York. It operates "Papa John's" Pizza at 703 Lenox Avenue, New York, New York 10039.

37.    Upon information and belief, John Doe 3 Corp., is a domestic corporation organized and existing under the laws of the State of New York. It operates "Papa John's" Pizza at 3477 Broadway, New York, New York 10031.

38.    Upon information and belief, Defendant Ronald Johnson ("Defendant Johnson") is an individual engaged in business in New York City.

39.    Defendant Johnson is sued individually and in his capacity as an owner, officer and/or agent of Defendant Corporations.

40.    Defendant Johnson possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations.

41.    Defendant Johnson determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

42.    Upon information and belief, Defendant Larry Doe ("Defendant Doe") is an individual engaged in business in New York City.

43.    Defendant Doe is sued individually and in his capacity as an owner, officer and/or agent of Defendant Corporations. Defendant Doe possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations.

7

44.     Defendant Doe determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

45.     Defendants operate a chain of Pizzerias located throughout New York, New York.

46.     The Individual Defendants Larry Doe and Ronald Johnson possess operational control over Defendant Corporations, possess an ownership interest in Defendant Corporations, and control significant functions of Defendant Corporations.

47.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

48.     Each Defendant possessed substantial control over the Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of the Plaintiffs, and all similarly situated individuals, referred to herein.

49.     Defendants jointly employed the Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

50.     In the alternative, Defendants constitute a single employer of the Plaintiffs and/or similarly situated individuals.

51.     Upon information and belief, Individual Defendants Larry Doe and Ronald Johnson operate each of Defendant Corporations as either an alter ego of themselves, and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by, amongst other things:

(a) failing to adhere to the corporate formalities necessary to operate Defendant Corporations as corporations;

(b) defectively forming or maintaining the corporate entities of Defendant Corporations, by amongst other things failing to hold annual meetings or maintaining appropriate corporate records;

(c) transferring assets and debts freely as between all Defendants;

(d) operating Defendant Corporations for their own benefit as the sole or majority shareholder;

(e) operating Defendant Corporations for their own benefit and maintaining control over them as closed corporations;

(f) intermingling assets and debts of their own with Defendant Corporations;

(g) diminishing and/or transferring assets of the entities to avoid full liability as necessary to protect their own interests; and

(h) other actions evincing a failure to adhere to the corporate form.

52.     At all relevant times, Defendants were the Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

9

53.     In each year from 2007 to the present, Defendants had gross annual sales of no less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

54.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. For example, numerous items that were used in the restaurants on a daily basis were goods produced outside of the state of New York.

### Individual Plaintiffs

55.     Plaintiffs are former employees of Defendants.  They were ostensibly employed as delivery workers, pizza makers and cashier.

56.     However, for delivery workers, the daily work performed by each of Plaintiffs entailed additional non-delivery, non-tipped duties outlined above.

57.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216 (b).

### Plaintiff Armando Lopez ("Plaintiff Lopez")

58.     Plaintiff Lopez was employed by Defendants from approximately August 2012 to December 23rd 2012.

59.     Defendants ostensibly employed Plaintiff Lopez as a delivery worker. However, Plaintiff Lopez was also required to perform additional non-tip duties such as dishwashing, washing pizza dough mixing containers, sweeping and mopping, cleaning the counter, oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker, transporting food and other items to and from other pizza locations and receiving and stocking deliveries around the basement.

60.     Although Plaintiff Lopez was ostensibly employed as a delivery worker, he spent more than 4 hours on a daily basis performing non-delivery work throughout his employment with Defendants.

61.     Plaintiff Lopez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

62.     Plaintiff Lopez's work duties required neither discretion nor independent judgment.

63.     Throughout his employment with defendants, Plaintiff Lopez regularly worked more than 40 hours a week.

64.     From approximately August 2012 until on or about December 23 2012, Plaintiff Lopez worked from approximately 3:00 p.m. until at or about 11:00 p.m. six days a week (typically 48 hours per week).

65.     Throughout his employment with Defendants, Plaintiff Lopez was paid by check.

66.     Plaintiff Lopez was paid at the rate of $5 per hour during his tenure with Defendants.

67.     Plaintiff Lopez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

68.     Defendants did not grant Plaintiff Lopez any  breaks or meal periods of any kind.

69.     Plaintiff Lopez was never notified by Defendants that his tips would be included as an offset for wages.

11

70.     Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Lopez's wages.

71.     In addition, since approximately June 2012, Plaintiff Lopez's manager (Felipe) withheld a portion of Plaintiff Lopez's credit card tips every day that he had collected at least around $40 in tips.  The manager also withheld a portion of Plaintiff Lopez's tips whenever he delivered a large order; this would occur at least once a week.

72.     Specifically, Mr. Lopez had to give the manager $15 to $ 20 of tips per shift, and if a specific tip was for more than $50 or $60 the manager always kept a considerable portion of the tip.

73.     Defendants did not permit Plaintiff Lopez to punch in and out of work or enter his start and stop times into a computer.  Instead, Plaintiff  Lopez's manager entered false start and stop times for him into a computer;

74.     Specifically, Defendants' time records falsely show Plaintiff Lopez as only working 40 hours per week rather than the 48 hours per week that he actually worked.

75.     Defendants never provided Plaintiff Lopez with each payment of wages a statement of wages, as required by NYLL 195(3).

76.     Defendants never provided Plaintiff Lopez with a written notice, in English and in Spanish (Plaintiff Lopez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

77.     Defendants required Plaintiff Lopez to purchase "tools of the trade" with his own funds—including a bicycle for $300 and two locks and chains for $60 each.  Thus, the total cost

of the "tools of the trade" Plaintiff Lopez was required to purchase as a delivery worker was approximately $420.

*Plaintiff Barbie Rodriguez*

78.     Plaintiff Rodriguez was employed by Defendants from approximately September 2012 to December 2012.

79.     Defendants employed Plaintiff Rodriguez as a cashier.

80.     Plaintiff Rodriguez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

81.     Plaintiff Rodriguez's work duties required neither discretion nor independent judgment.

82.     Throughout her employment with Defendants, Plaintiff Rodriguez regularly worked more than 40 hours per week.

83.     From approximately September 2012 through December 2012, Plaintiff Rodriguez worked from approximately 11 a.m. until on or about 8:00 p.m. six days a week. (Typically 54 hours per week)

84.     Throughout her employment with Defendants, Plaintiff Rodriguez was paid by check.

85.     Plaintiff Rodriguez was paid at the rate of $7.25 per hour throughout her employment with defendants.

86.     Plaintiff Rodriguez's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

87.     Defendants did not grant Plaintiff Rodriguez any breaks or meal periods of any kind.

88.     Defendants did not permit Plaintiff Rodriguez to punch in and out of work or enter her start and stop times into a computer. Instead, Plaintiff Rodriguez's manager entered false start and stop times for her into a computer;

89.     Specifically, the defendant's time records falsely show Plaintiff Rodriguez working only 45 hours per week, when she actually worked 54 hours per week.

90.     Defendants never provided Plaintiff Rodriguez with each payment of wages a statement of wages, as required by NYLL 195(3).

91.     Defendants never provided Plaintiff Rodriguez with a written notice, in English and in Spanish (Plaintiff Rodriguez's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Cesar Melo ("Plaintiff Melo")*

92.     Plaintiff Melo was employed by Defendants from approximately July 2012 through January 2013.

93.     From July 2012 through January 2013, Defendants ostensibly employed Plaintiff Melo as a delivery worker.

94.     However, Plaintiff Melo was also required to perform additional non-tip duties including preparing salads, cutting peppers, sausages, chicken, meatballs, cutting and grating cheese, dishwashing, washing pizza dough mixing containers, sweeping and mopping, cleaning the counter, the oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker, transporting food and other items to and from other pizza locations and receiving and stocking deliveries around the basement.

95.     Although Plaintiff Melo was ostensibly employed as a delivery worker, he spent more than 4 hours on a daily basis performing non-delivery work throughout his employment with Defendants.

96.     Plaintiff Melo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

97.     Plaintiff Melo's work duties required neither discretion nor independent judgment.

98.     Throughout his employment with Defendants, Plaintiff Melo regularly worked more than 40 hours per week.

99.     From approximately July 2012 until on or about January 2013, Plaintiff Melo worked from approximately 11:00 a.m. until on or about 5:00 p.m. on Mondays, 4 hours a day on Tuesdays and from approximately 5:00 p.m. until on or about 12:00 p.m., Wednesdays through Sundays (typically 45 hours per week).

100.    Throughout his employment with Defendants, Plaintiff Melo was paid by check.

15

101.   Plaintiff Melo was paid at the rate of $5 per hour throughout his tenure with Defendants.

102.   Plaintiff Melo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

103.   Defendants did not grant Plaintiff Melo any breaks or meal periods of any kind.

104.   Plaintiff Melo was never notified by Defendants that his tips would be included as an offset for wages.

105.   Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Melo's wages.

106.   No notification, either in the form of posted notices, or other means, was given to Plaintiff Melo regarding overtime and wages under the FLSA and NYLL.

107.   Defendants did not permit Plaintiff Melo to punch in and out of work or enter his start and stop times into a computer.  Instead, Plaintiff  Melo's manager entered false start and stop times for him into a computer;

108.   No notification, either in the form of posted notices, or other means, was given to Plaintiff Melo regarding overtime and wages under the FLSA and NYLL.

109.   Defendants never provided Plaintiff Melo with each payment of wages a statement of wages, as required by NYLL 195(3).

110.   Defendants never provided Plaintiff Melo with a written notice, in English and in Spanish (Plaintiff Melo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

111.    Defendants required Plaintiff Melo to purchase "tools of the trade" with his own funds—including 2 bikes for $200 each, a lock and key set for $60, and a pizza carrier/holder for $40.00. Thus, the total cost of the "tools of the trade" Plaintiff Melo was required to purchase as a delivery worker was approximately $500.

### Plaintiff Delgadino Alberto

112.    Plaintiff Alberto was employed by Defendants from approximately February 2006 until February 25th, 2013.

113.    Defendants employed Plaintiff Alberto as a delivery worker and pizza maker.

114.    However, Plaintiff Alberto was also required to perform additional non-tip duties when he worked as a delivery worker in the morning, including preparing salads, assisting the dough maker by bringing the ingredients he needed, making and weighing dough balls, making pizza sauce, sweeping and mopping, cutting peppers, sausages, chicken, meatballs, cutting and grating cheese, dishwashing, washing pizza dough mixing containers, cutting dough squares for sicilian pizza, cleaning the counter, the oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker, transporting food and other items to and from other pizza locations and receiving and stocking deliveries around the basement.

115.    Although Plaintiff Alberto was ostensibly employed as a delivery worker, he spent more than 4 hours on a daily basis performing non-delivery work throughout his employment with Defendants.

116.    Plaintiff Alberto regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

17

117. Plaintiff Alberto's work duties required neither discretion nor independent judgment.

118. Throughout his employment with defendants, Plaintiff Alberto regularly worked more than 40 hours per week.

119. From March 2007 until March 2010 Plaintiff Alberto worked as a delivery worker from approximately 9:45 a.m. to at or about 6:00 p.m. on Mondays, Tuesdays, Wednesdays, and Fridays, and from 11:00 a.m. to 8:00 p.m. Saturdays and Sundays at the Defendants' locations on 145th St. and Lenox Ave. and 142nd St. and Broadway (typically 51 hours per week).

120. From approximately March 2010 until on or about August 2012 Plaintiff Alberto worked from approximately 9:45 a.m. until at or about 11:00 p.m. 2 days a week and from approximately 11:00 a.m. until on or about 11:00 p.m. 4 days a week, at the Defendants' location on 109th St. and First Avenue (typically 72 hours per week).

121. During this period of time, Mr. Alberto worked doing deliveries until 5:00 p.m. and resumed work at 5:30 p.m. as a pizza maker four days a week.

122. From August 2012 until on or about March 2013 Plaintiff Alberto worked from approximately 11:00 a.m. until about 8:00 p.m. 4 days per week doing delivery work only and from 11:00 a.m. until on or about 12:00 a.m. 3 days per week doing delivery work in the morning and making pizza after 5:00 p.m. with no breaks at the Defendants' location on 109th St. and First Avenue (typically 75 hours per week).

123. Throughout his employment with Defendants, Plaintiff Alberto was paid his wages by check.

124.    From approximately March 2007 until March 2010 Plaintiff Alberto was paid at the rate of $5 per hour.

125.    From approximately March 2010 until on or about August 2012, Plaintiff Alberto was paid $5 per hour for doing deliveries in the morning and $7.50 per hour for making pizza in the evenings.

126.    From approximately August 2012 until on or about January 2013, Plaintiff Alberto was paid $5.50 per hour for doing deliveries and $7.50 for making pizza in the evenings.

127.    Defendants routinely obfuscated Plaintiff Alberto's actual hours by reporting him as a separate person for each of the jobs he performed.

128.    In other words, Defendants split Plaintiff Alberto's morning and evening shifts between two identities, and accounted for him under the false name of Alfredo Guerrero and a corresponding false social security number for the night shift.

129.    From August 2012 to March 2013, Defendants paid Mr. Alberto two (2) separate checks with two different names and social security numbers.

130.    By employing this practice, Defendants avoided paying Plaintiff Alberto at the overtime rate of time and a half for most or all of the hours he worked in excess of forty (40) hours per week.

131.    Additionally, Defendants refused to pay Plaintiff Alberto for time at the end of his employment with them.  Defendants owe Plaintiff Alberto $750 in unpaid wages.

132.    Plaintiff Alberto's pay (and that of the false individual) did not vary even when he was required to stay later or work a longer day than his usual schedule.

133.   Defendants did not grant Plaintiff Alberto any breaks or meal periods of any kind.

134.   Plaintiff Alberto was never notified by Defendants that his tips would be included as an offset for wages.

135.   Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Alberto's wages.

136.   In addition, since approximately June 2012, Plaintiff Alberto's manager withheld a portion of Plaintiff Alberto's credit card tips every day that he had collected around $40 in tips. The manager also withheld a portion of Plaintiff Alberto's tips whenever Plaintiff Alberto delivered a large order; this would occur at least once a week.

137.   Specifically, Mr. Alberto had to give the manager $15 to $ 20 per shift and if a specific tip was for more than $50 or $60 the manager always kept a considerable part of the tip in addition to the $15 or $20 that he required daily.

138.   Defendants did not permit Plaintiff Alberto to punch in and out of work or enter his start and stop times into a computer. Instead, Plaintiff Alberto's manager entered false start and stop times for him into a computer.

139.   Specifically, the defendant's time records falsely show Plaintiff Alberto and the false individual working only 40 hours per week, when he actually worked approximately 55 to 75 hours per week.

140.   Defendants never provided Plaintiff Alberto with each payment of wages a statement of wages, as required by NYLL 195(3).

141.   Defendants never provided Plaintiff Alberto with a written notice, in English and

in Spanish (Plaintiff Alberto's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

142.    Defendants required Plaintiff Alberto to purchase "tools of the trade" with his own funds—including a bike for $400 and a lock and key set for $150. Thus, the total cost of the "tools of the trade" Plaintiff Alberto was required to purchase as a delivery worker was approximately $550.

*Plaintiff Santiago Diaz*

143.    Plaintiff Diaz was employed by Defendants from approximately October 2012 until March 3rd, 2013.

144.    Although Plaintiff Diaz was ostensibly employed as a delivery worker, he spent more than three hours on a daily basis performing non-delivery work throughout his employment with Defendants

145.    Plaintiff Diaz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

146.    Plaintiff Diaz's work duties required neither discretion nor independent judgment.

147.    Throughout his employment with defendants, Plaintiff Diaz regularly worked more than 40 hours a week.

148.    From approximately October 2012 until on or about March 3rd, 2013, Plaintiff Diaz worked from approximately 11:00 a.m. until about 8:00 p.m. on Tuesdays, Wednesdays, Thursdays, Friday, Saturdays and Sundays (typically 54 hours per week).

149.    Throughout his employment with defendants, Plaintiff Diaz was paid his wages in a combination of cash and check.

21

150.    From approximately October 2012 until on or about March 3rd, 2013, Plaintiff Diaz was paid at the rate of $5.00 per hour.

151.    Plaintiff Diaz's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

152.    Defendants did not grant Plaintiff Diaz any breaks or meal periods of any kind.

153.    Plaintiff Diaz was never notified by Defendants that his tips would be included as an offset for wages.

154.    Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Diaz's wages.

155.    In addition, since approximately June 2012, Plaintiff Diaz's manager (Felipe) withheld a portion of Plaintiff Diaz's credit card tips every day that he had collected around $40 in tips.  The manager also withheld a portion of Plaintiff Diaz's tips whenever he delivered a large order; this would occur at least once a week.

156.    Specifically, Mr. Diaz had to give the manager $15 to $ 20 per shift, and if a specific tip was for more than $50 or $60 the manager always kept a considerable portion of the tip.

157.    No notification, either in the form of posted notices, or other means, was given to Plaintiff Diaz regarding overtime and wages under the FLSA and NYLL.

158.    Defendants did not permit Plaintiff Diaz to punch in and out of work or enter his start and stop times into a computer.  Instead, Plaintiff  Diaz's  manager  entered false start and stop times for him into a computer;

159.    Defendants never provided Plaintiff Diaz with each payment of wages a statement of wages, as required by NYLL 195(3).

160.    Defendants never provided Plaintiff Diaz with a written notice, in English and in Spanish (Plaintiff Diaz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

### Defendants' General Employment Practices

161.    At all relevant times, Defendants were the Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

162.    At all times relevant to this complaint, Defendants maintained a policy and practice of requiring the Plaintiffs and all similarly situated employees to work in excess of forty (40) hours per week without paying them appropriate minimum wage and/or overtime compensation, or spread of hours compensation, as required by federal and state laws.

163.    Defendants routinely obfuscated Plaintiff Alberto's actual hours by reporting him as a separate person with different false social security numbers for each job worked, and requiring him to work over 40 hours total in the week, but splitting his morning and evening shifts between two identities (and forced Plaintiff Alberto to use a false name and/or social security number for one of the shifts).

164.    In addition, Defendants had their managers punch the Plaintiffs and all other workers in and out of work at false times.

165.   Defendants have engaged in its unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

166.   Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former workers.

167.   At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs to work in excess of forty (40) hours per week without paying them appropriate minimum wage and/or overtime compensation, or spread of hours compensation, as required by federal and state laws.

168.   Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

169.   Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

170.   Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

171.   Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

172.   Plaintiffs have been victims of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by *inter alia*, willfully denying

them their earned tips and not paying them the wages they were owed for the hours they had worked.

173. Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

174. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This pattern, practice and/or policy included depriving delivery workers of a portion of the tips earned during the course of employment.

175. Defendants unlawfully misappropriated charges purported to be gratuities, received by Plaintiffs and other delivery workers in violation of New York Labor Law § 196-d (2007).

176. Under the FLSA and the NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

177. Moreover, at all times Defendants required Plaintiffs who were tipped employees such as delivery workers to perform the jobs of multiple employees in addition to their primary responsibilities. These additional, non-related, and non-tipped duties occupied more than two hours of each Plaintiff's workday.

178. Defendants paid these Plaintiffs at the lowered tip-credited rate, however Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less). 12 N.Y.C.R.R. § 146.

25

179.    Many Plaintiffs were employed ostensibly as delivery workers (tipped employees) by Defendants, although their actual duties included greater or equal time spent in non-delivery, non-tipped functions such as those outlined above.

180.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day . . . in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3, 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56 (e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

181.    Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated occupations with duties including transportation of items between store locations, maintenance and cleaning, food preparation, receiving and storing deliveries, dishwashing and kitchen assistance. While performing these duties, Plaintiffs did not receive tips; therefore, they constitute non-tipped occupations, and Defendants could not lawfully take a tip credit for any of the hours that Plaintiffs worked in these roles.

182.    Since Plaintiffs spent more than two hours of their workday in non-tipped, non-delivery functions, Defendants were not entitled to take a tip credit with respect to their wages.

183.    In violation of federal and state law as codified above, Defendants classified Plaintiffs as tipped employees and paid them below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate for all the hours they worked.

184.    Defendants employed Plaintiffs as delivery workers and required them to provide their own locks, chains and bicycles, and refused to compensate them or reimburse them for these expenses.

185.    Defendants did not provide Plaintiffs with any break periods.

186.    Defendants failed to provide Plaintiffs and other employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL §195(3).

187.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

*FLSA Collective Action Claims*

188.    On information and belief, there are over sixty current and former employees that are similarly situated to Plaintiffs who have been denied minimum wage and overtime compensation while working for Defendants.

189.    The named Plaintiffs are representative of these other workers and are acting on behalf of their interests as well as their own interest in bringing this action.

190.    Similarly situated former and current employees are readily identifiable and locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216 (b). Unless the Court promptly issues such notice, persons similarly situated to the Plaintiffs, who have been unlawfully deprived of minimum wage and overtime pay in violation of the Fair Labor Standards Act, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## FIRST CAUSE OF ACTION
### Violation of the Minimum Wage Provisions of the FLSA

191.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

192.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (d).

193.    At all relevant times, Defendants were engaged in commerce or in an industry or activity affecting commerce.

194.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r).

195.    Defendants intentionally failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206 (a).

196.    Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255 (a).

197.    Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### Violation of the Overtime Provisions of the FLSA

198.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

199.    Defendants intentionally failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a) (1).

200.    Defendants" failure to pay Plaintiffs overtime compensation was willful within the meaning of 29 U.S.C. § 255 (a).

201.    Plaintiffs have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### Violation of the New York Minimum Wage Act

202.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

203.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

204.    Defendants willfully failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of the New York Minimum Wage Act and regulations.

205.    Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

206. Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

207. Plaintiffs have been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### Violation of the Overtime Provisions of the New York State Labor Law

208. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

209. Defendants willfully failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of N.Y. Lab. Law § 190 et seq. and regulations of the New York State Department of Labor.

210. Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

211. Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

212. Plaintiffs have been damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### Spread of Hours Wage Order of the New York Commissioner of Labor

213. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

214. Defendants failed to pay Plaintiffs one additional hour pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten in violation of N.Y. Lab. Law § 190 et seq. and § 650 et seq. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, §137-1.7 and 137-3.11.

215.    Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

216.    Defendants' failure to pay Plaintiffs an additional hour pay for each day Plaintiffs' spread of hours exceeded ten was willful within the meaning of N.Y. Lab. Law § 663.

217.    Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE New York LABOR LAW)

218.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

219.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

220.    Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorney's fees.

## SEVENTH CAUSE OF ACTION
## (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE New York LABOR LAW)

221.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

222.    Defendants did not provide Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

223.    Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)     Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)     Declaring that the Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any  deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)     Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any  improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any   improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)     Declaring that the Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages; and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, damages for any   improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime

33

compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(q)     Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorney's fees;

(r)     Providing that if any   amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.


Dated: New York, New York
         March 29, 2013

MICHAEL FAILLACE & ASSOCIATES, P.C.

By: _____
         Michael Faillace [MF-8436]
         60 East 42nd Street, Suite 2020
         New York, New York 10165
         (212) 317-1200